Thank you, Your Honor. May it please the Court, I present the defendants. This is an inconsistent verdict case. Plaintiff's theory at trial was that defendants viciously assaulted him in retaliation for his filing grievances. The alleged adverse action for purposes of the retaliation claim was the excessive force. So defendants vigorously argued that if the jury found no excessive force, it should not reach the retaliation claim. Can I ask you a threshold question because this wasn't really covered in the briefs, but I'm concerned about the legal standard that we're applying here, that the inactively inconsistent standard in terms of conflicting verdicts, we have said over and over again, applies when there's special interrogatories, but does not apply if there is an inconsistent general verdict on separate claims. And I know that the verdict sheet said at the top, special verdict sheet, but I look at these questions and this is like a classic general verdict sheet to me, but why isn't this a general verdict sheet as opposed to special interrogatories? The verdict sheet in this case is very similar to the verdict sheet at issue in Baskerville v. Mulvaney. In that case, too, the jury was asked, do you find by a preponderance of the evidence that defendants subjected the plaintiff to excessive force in violation of the Eighth Amendment? And the court in that case held quite clearly that a finding of no excessive force necessarily means that. Let's put Baskerville aside. I'll look at Baskerville. But we have said, I'll give you the latest summary order that says inactively inconsistent jury response to special interrogatories require retrial. But the same is not true for inconsistent general verdicts on separate claims. And maybe we can reach it, a court can reach it in its discretion if it wants to, but what these cases say, and there's a bunch of published opinions that support that, is a court doesn't have to. If it's a general verdict and it's inconsistent, a court just does not have to address it. So let's assume that's the law. Why isn't this a general verdict? It doesn't ask any questions, right? It just says, how do you find on excessive force? How do you find on retaliation? Isn't that a general verdict? Your Honor, you probably know more about verdict sheets than I do. My understanding is that a general verdict says, do you find defendants liable? And I thought this was more of a special verdict. Perhaps it is more of a general verdict. This is a general verdict. I accept that. I will note that in finding it. Because it wasn't brief, but the district court decided this under 49B, which I don't think is correct. This is not under 49B, which deals with special interrogatory cases. But anyway, okay. Sorry to sidetrack you on that. But in terms of it being irreconcilable, in this case, unlike Baskerville, where if you look at the jury instructions in Baskerville and Barnes, in both of them, the district court said that in instructing it, put in good faith in the instruction. So it was either this is in good faith or it's malicious. It was specifically requested that the district court remove that good faith language. So why isn't that different? In other words, in those cases, we don't have a jury that was given instructions on both. And we can look at an instruction and say, is there a way to reconcile this based on the instructions that this particular jury was given? Do you understand what I'm saying? Yes, Your Honor. There was no either or here. It's either good faith or it's malicious, right? That's not the way they were instructed here. It's not precisely how he was instructed. Do you agree we were guided by the instructions here in answering the logical inconsistency or consistency question? Yes. Your Honor, the inconsistent verdict cases I've read reference the law itself rather than the law as instructed to the jury. In fact, in Finnegan v. Fountain, this Court took the opportunity to advise the judge on how to fix the instructions on remand. You didn't challenge – you didn't object to – these are the instructions you asked for. You didn't object. So if you're challenging instructions, then we are into the waiver issue that the other side raises. I had understood you to not be challenging the instructions since you requested them. In that case, I think we are – there's lots – several cases that stand for the proposition that we assess this question by the instructions given rather than by instructions that you may wish now had been given. Even so, the instructions were not wrong. They summarized the law for the jury. They did not necessarily include every single principle of law that could apply in the case. But the instruction here just said you have to determine whether or not it was maliciously and statistically done to cause harm. Nothing about – it's either good faith or it's malicious. That's what the case in Baskerville. And in Baskerville, on top of that, in Baskerville, the judge told the jury in considering maliciousness, you can consider retaliation. That's part of maliciousness. So that's why in that case we specifically said that you could dismiss on the retaliation claim. Obviously, we don't have that type of instruction here. And you say in the briefs multiple times a finding that force was not applied maliciously and statistically necessarily implies a good faith use of force. I don't understand that. There's a lot of things that you can do that are not maliciously and statistically done to cause harm that are still retaliatory. For example, let me give you a hypothetical. Suppose those officers went in there and they didn't want to harm him. They just wanted to rough him up a little bit because he had made a complaint and they wanted to send a message to him. So their intent in going there was not to cause harm. It was to rough him up to send a message. But as they were doing that, things got out of control and they ended up breaking his ribs. So if that was what the jury concluded based upon the trial testimony, which would have been their right to conclude, why is that inconsistent? If that's what they concluded, they didn't go in there to harm him, they went in there to rough him up to retaliate, and it got out of control, and then they had to use more force and they broke his ribs, why wouldn't that be, under this instruction, not an Eighth Amendment violation because it wasn't done to injure, but retaliation? It sounds like excessive force to me. What you described, if they went in there to rough him up and they— They don't want to harm him, though. We don't want to break his ribs or anything. We're going to rough him up a little bit. You in your brief say that not every Eighth Amendment violation in terms of force rises. You could have force that doesn't rise to the level of an Eighth Amendment violation. That's retaliatory, right? I mean, and it also seems to me that that's what was happening with the jury instruction. You were trying to make it harder to meet excessive force, and then in doing so you took out the good faith, and so now we're in this position where just because—just plain force could be retaliatory, right? I mean, you wouldn't dispute that. Plain force? Just, like, not excessive, but force. Like, force could be retaliatory. Well, I think it's useful to distinguish between the objective and the subjective— objective and subjective components under the Eighth Amendment. Objectively, any non-de minimis use of force in the prison context is going to satisfy the objective element. This Court made that clear in Harris, citing McMillian. No, I'm sorry. I'm asking the question, could force, not excessive force, but just force be retaliatory? Yes, of course. You would concede that? Yes. Okay. So why isn't that what happened here? The jury found that it was not excessive force, but did find force, and that was retaliatory enough to support the retaliation claim. There's just no daylight in these cases where there's no dispute that defendants did use sufficiently serious force to fracture plaintiffs' murder. The question is whether there's logical daylight in the instructions that were provided, and I think here the way that, as Judge Bianco said, you didn't say it's either good faith or malicious and sadistic. It just says use force maliciously and sadistically, and then you define maliciously and you define sadistically, and sadistically means with extreme or excessive force. So as a logical matter, there is daylight between that and the retaliation charge, because the jury could have concluded that he, that they used force as retaliation, but that it wasn't sadistic. It wasn't extreme or excessive. I mean, just as a, if you map out the logic equation, there is daylight. I think under controlling precedent, under Supreme Court's decision in Hudson, there is no daylight, because the use of force has to be either in good faith or in bad faith. You removed the good faith language. We're not just operating under what the law is under this general standard. We have to go when there's a conflicting verdict by what the jury was told. So were you the lawyer below, or was that somebody else? I was not the lawyer below. Yeah, so the lawyer below, even though the law is exactly that. It's either good faith or it's sadistic. In this context, it says to the judge, take out good faith. The judge agrees to take it out, and now when there's a conflicting verdict, you're suggesting that it was neither or under the law, and that's not what the jury was told. And I would like to point out defense counsel did propose instructions that would have used that dichotomy, reasonable force versus excessive force, and that's at pages 70 and 71 of the joint appendix. The district court did not include those instructions. The district court did instruct the jury that you must give prison officials wide-ranging deference in the adoption and execution of policies and practices that are needed to preserve internal order, and you had testimony from Sergeant Mallory. That's probably why there was no conviction on the excessive force, right? Well, we agree, Your Honor, yes, but because the jury found that there was no excessive force, because the jury found that defendants used force and good faith, the bear hug, the holding of the arm to restrain plaintiff, that means that retaliatory animus could not have been the but-for-cause. They didn't make findings about everything they did during that scenario was done in good faith and was necessary. That's what I was trying to point out with my hypothetical. There's a lot of different things when force is used where they could find one part of it was okay but another part of it was not. In a different case, that's certainly true. In this case, just focus on my hypothetical, all right? They just go in there not to injure him but to rough him up without any intent to cause injury, okay? Will you accept that? Okay. Okay? Okay. A jury could find that, right? Couldn't a jury find that when they went in there, they were going to strip search him, they were going to maybe rough him up a little bit, manhandle him a little bit but not break his rib? Couldn't they find that? No, Your Honor. No? They had to find that they went in there with the intent to break his rib? Why would they have to find that? No, I'm talking about the roughing it up in particular. There was testimony that defendants punched him, banged his head against the desk, inserted something. Okay, but they could have rejected the banging his head against the desk and inserting something in his rectum, right? They could have just said they went in there and they punched him and or kicked him but they went in there just to not injure him, just to send a message, and it got out of control because he got off the wall and then they ended up taking him to the ground and he broke his rib. So we don't think they went in there with any malicious intent to harm him. They just wanted to send him a message. Under this instruction, I think they did exactly what those instructions allowed them to do. That's what they found, right? And again, I respectfully disagree. Why? Because once plaintiff reached for his leg, that's when defendants used force, sufficiently serious force to meet the objective element of the Eighth Amendment. And there was testimony that that force was justified. All right. All right. Thank you. You have two minutes in rebuttal. Okay. Thank you. Mr. Sivin. Thank you, Your Honors. Edward Sivin for the plaintiff appellee. Your Honors have actually made all the arguments that I was going to make, so. Well, let me ask. So I'm going to ask a few questions. So as I indicated in asking counsel, as I see the logical problem that we are relying on the instructions given and there is daylight between the Eighth Amendment instruction and the retaliation instruction, the place where it gets harder, where that window, I think, closes more, which we didn't discuss, is the punitive damage conclusion. Because to have found punitive damages, they do have to, they did have to, the jury had to conclude that the acts were done maliciously or wantonly. So if the acts were done maliciously or wantonly, then what is the daylight between that and what they didn't find with the Eighth Amendment claim? Yeah. Well, I think they could have found that the acts were wanton because this was an incarcerated individual that the officers knew was suffering from severe mental illness, and they went into his cell for the purpose of retaliating against him for exercising his First Amendment rights. And they did that because they felt they wanted to protect fellow officers against whom Mr. Hunley had made allegations that they thought were unjustified. So that wouldn't necessarily be a malicious or sadistic type of motivation, but it could arise to the level of punitive damages to subject a mentally ill incarcerated individual to threats, harassment, and some use of force. That's a sliver of daylight, I suppose. Right. It has to be that wanton because the instruction on punitive damages was maliciously or wantonly. So you're saying if they could have concluded wantonly, which isn't the same meaning as sadistic, meaning extreme or excessive. That's the argument? Yeah. I'll admit I have some confusion over the various terms myself, but I think what this Court has said in Alley v. Kipp is that you must adopt a view of the case if there is one that resolves any seeming inconsistency making every attempt to reconcile the jury's findings. And I think that's the way to do it here. Right. And so to that end, the Alley v. Kipp line, can you – and to use Judge Bianco's words, to rough him up or intimidate him and the like, what is the evidence that the jury heard as to that? The jury could have accepted the defendant's version that all they did was wrap their arms around him in a bear hug and brought him to the ground. Under that circumstance, the jury could have said, you know what, this is a de minimis use of force, which would not qualify for the Eighth Amendment, but it could qualify for a First Amendment violation. Okay. I thought you were going to say things like the improper interview inside the cell as opposed to out of the cell, the fact that folks were – many of them were coming over. Is there other evidence you were going to – that the jury heard? That as well, that they came in, they threatened him. They made reference to the fact of complaints that he had made. They said, if you're going to F with us, we're going to F with you. Again, saying this to a diagnosed, mentally ill, incarcerated individual, the jury could have concluded that that was what happened, but it wasn't necessarily sadistic and malicious because they were doing it, in their view, to protect a fellow officer. Unless the court has any other questions for me, I'll rest on the brief. Do you have a view of Judge Bianco's question about the general verdict versus specific verdict issue? I'll admit that I'm not as up as the court on that particular issue, but I'll accept the court's view that it was a general verdict and not a special verdict. All right. Thank you. Mr. Kiernan, you have two minutes in rebuttal. Thank you. And just to be clear, we're appealing the decision to deny the motion for a new trial under Rule 59. All we're asking for is a new trial. In that trial, it may very well be that the jury finds both excessive force and retaliation. That would be consistent. Or neither, excessive force nor retaliation. Or excessive force but not retaliation. And I want to focus on what the adverse action was for purposes of the retaliation claim. The theory was that it was the assault itself. Plaintiff did not argue that the path risk was itself adverse action. Well, right, but that's where the Alley v. Kipp, that's where the Turley v. Police line of case, is suggesting that we need to, even if by exegesis, come up with some sort of theory that might have worked for the jury. I mean, you don't dispute those cases, right? No, that's certainly true. Or that I've represented what they stand for correctly. Yes, but the problem here is that there was no testimony that the path risk itself would have deterred an incarcerated individual of ordinary firmness from filing a grievance. And, in fact, plaintiff testified, this is at 137 of the joint appendix, that he didn't see anything wrong with the path risk. You would agree that we're not limited to the specific theories of the case presented by the parties. Is that right? I mean, isn't that what Alley v. Kipp says? The court is limited to the record, not necessarily the theory. Right, and so records like, you know, the fact that more than one officer went there, the fact that they didn't stay outside the cell, that they actually went inside the cell, plus his testimony as to what they told him, is that not enough for the jury, and also given the credibility issues that your side had with what the officers were? I would say it's not enough for adverse action. In addition, because there was testimony that path risks are routine, and there was no testimony rebutting that assertion at trial. Unless the court has any further questions, I urge the court to vacate the decision and remand for a new trial. Thank you. Thank you both. We'll reserve the decision. Have a good day.